United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADCAST MUSIC INC., FOURTEENTH HOUR MUSIC, INC.; COTILLION MUSIC, INC. d/b/a Pronto Music; MOEBETOBLAME MUSIC; SONGS OF UNIVERSAL, INC.; UNIVERSAL MUSIC-Z TUNES, LLC dba UNIVERSAL MUSIC Z SONGS; SHROOM SHADY MUSIC; HOTEL BRAVO MUSIC; M SHOP PUBLISHING, A DIVISION OF MACHINE SHOP PUBLISHING, LLC; SONY/ATV SONGS LLC,<br><br>    Plaintiff(s),<br><br>    v.<br><br>1233 POLK STREET, dba MAYES OYSTER HOUSE; CONOR JAMES NUGENT; and RORY GENE FOOS, each individually,<br><br>    Defendant(s).<br>_____/ | No. C-13-01211 PJH (DMR)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [DOCKET NO. 16]** |

In this action for copyright infringement, Plaintiffs Broadcast Music, Inc. ("BMI"), Fourteenth Hour Music, Inc., Cotillion Music, Inc. dba Pronto Music, Moebetoblame Music, Songs of Universal, Inc., Universal Music-Z Tunes dba Universal Music Z Songs, Shroom Shady Music, Hotel Bravo Music, M Shop Publishing (a division of Machine Shop Publishing, LLC), and Sony/ATV Songs LLC move the court pursuant to Federal Rule of Civil Procedure 55(b)(2) for default judgment against Defendants 1233 Polk Street, LLC dba Mayes Oyster House, Conor James

1  Nugent, and Rory Gene Foos. [Docket No. 16.] Plaintiffs request injunctive relief, statutory
2  damages, attorneys' fees and costs, and interest.
3      The Honorable Phyllis J. Hamilton referred this matter to the undersigned to prepare a report
4  and recommendation on Plaintiffs' motion for default judgment. [Docket No. 17]. Having reviewed
5  the matter, the court now issues this Report and Recommendation, with a recommendation that the
6  motion be granted.

## I. Statement of Facts & Procedural History

BMI is a New York corporation with its principal place of business in New York. Compl. ¶ 4. BMI holds the right to license the public performance rights in approximately 7.5 million copyrighted musical compositions, including those that are the subject of this lawsuit.[1] Compl. ¶ 4. The Plaintiffs other than BMI ("non-BMI Plaintiffs") are the owners of the copyrights in the musical compositions at issue here.

Defendant 1233 Polk Street operates, maintains and controls an establishment known as Mayes Oyster House located in San Francisco. Compl. ¶ 15. In connection with the operation of Mayes Oyster House, 1233 Polk Street performs or causes musical compositions to be performed publicly. Compl. ¶ 16. Nugent and Foos are members of 1233 Polk Street with primary responsibility for the operation and management of 1233 Polk Street and Mayes Oyster House. Compl. ¶¶ 18-21. Both Nugent and Foos have the right and ability to supervise the activities of 1233 Polk Street, and a direct financial interest in both 1233 Polk Street and Mayes Oyster House. Compl. ¶¶ 18-21. Nugent is also listed as 1233 Polk Street's manager. Pl.'s Supp. Br. [Docket No. 27] at 4, Frank Supp. Decl. [Docket No. 27-1] Ex. A (Oct. 1, 2013, California Department of Alcoholic Beverage Control file for 1233 Polk Street, LLC).

---

[1] BMI operates as a "non-profit performing rights society." Lloyd Decl. [Docket No. 16-1] ¶ 3. After acquiring non-exclusive public performance rights from copyright owners, such as the other Plaintiffs, BMI grants licensees (music users such as restaurants, nightclubs, and broadcasters) the right to publicly perform a repertoire of 7.5 million copyrighted musical compositions by means of "blanket license agreements." Lloyd Decl. ¶ 2. After deducting operating expenses and reasonable reserves, BMI distributes the money it collects in license fees as royalties to its affiliated copyright owners. Lloyd Decl. ¶ 3.

Prior to July 2011, Plaintiffs learned that Mayes Oyster House was publicly performing BMI compositions without authorization or license. Stevens Decl. [Docket No. 16-2] ¶ 3. Between July 2011 and January 25, 2013, BMI repeatedly informed Defendants of the need to obtain permission for public performances of the copyrighted music. Stevens Decl. ¶ 3. On July 8, 2011, BMI sent a letter, information brochure and BMI license agreement to Mayes Oyster House, advising Defendants to execute a license agreement. Stevens Decl. ¶ 3. Defendants did not respond. Stevens Decl. ¶ 3. BMI sent additional letters throughout 2011 and 2012. Stevens Decl. ¶ 5. Between May 15 and May 22, 2012, BMI sent Defendants letters instructing them to cease the public performance of BMI licensed music. Stevens Decl. ¶ 6. In total, according to its records, BMI telephoned Defendants fifty-two times and sent them twenty-two letters. Stevens Decl. ¶¶ 3-8.

On June 27, 2012, BMI sent Jennica Jansen to visit Mayes Oyster House and make an audio recording and written report of the music being performed. Stevens Decl. ¶ 11. Jansen's report and subsequent review of the audio recording confirmed that four compositions owned by the non-BMI Plaintiffs and licensed to BMI were publicly performed on that date. Stevens Decl. ¶¶ 11-12. On January 16, 2013, BMI sent Mayes Oyster House two letters addressed to Nugent and Foos advising them of an investigation, with an additional letter dispatched on January 25, 2013. Stevens Decl. ¶ 13. Nugent and Foos never responded. Stevens Decl. ¶ 13. To this day, BMI has not received an executed license from Defendants, and aver upon information and belief that Defendants are still publicly performing BMI-licensed compositions at Mayes Oyster House. Stevens Decl. ¶ 15.

Plaintiffs claim that they have complied in all respects with the requirements of the Copyright Act for each allegedly infringed work and have received Certificates of Registration bearing each copyrighted works' registration number. Compl. ¶ 26; *see also* Compl. at 7-8 (Schedule).

Plaintiffs filed their Complaint on March 19, 2013, alleging four claims of willful copyright infringement. Compl. ¶ 23. Defendants were served by substitute service with a copy of the summons, Complaint, and other related documents on March 29, 2013. Frank Decl. [Docket No. 16-3] ¶ 5; Pl.'s Supp. Br. at 2; *see also* Proof of Service [Docket No. 9]. Defendants have not answered

or otherwise responded to the Complaint.[2]  Frank Decl. ¶ 9.  Plaintiffs requested an entry of default on June 6, 2013, which the clerk entered the following day.  [Docket Nos. 10, 11.]  On July 23, 2013, Plaintiffs filed this motion.  Because Plaintiffs' original motion failed to address their entitlement to default judgment pursuant to the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), the court ordered supplemental briefing.  [Docket No. 20.]  The court conducted a hearing on the motion on October 31, 2013.

## II.  Legal Standards

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default.  Whether to enter a judgment lies within the court's discretion.  *Eitel*, 782 F.2d at 1471; *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001).  In considering Plaintiffs' motion for default judgment, the court takes as true the allegations in the Complaint and resolves all factual disputes in Plaintiffs' favor.  *Id.*; *Cripps*, 980 F.2d at 1267.

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel*, 782 F.2d at 1471-72 (citation omitted).  In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).  Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim.  *Id.*  The fourth factor focuses on

---

[2] A Mayes Oyster House representative, identified only as "Amanda," contacted Plaintiffs' counsel, Karen S. Frank, in order to engage in settlement discussions.  These discussions did not result in a settlement.  Frank Decl. ¶ 8.

4

the amount at issue in the action, as courts should be hesitant to enter default judgments in matters involving large sums of money. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Constr., Inc.*, No. C 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted).

### III. Analysis

#### A.  Subject Matter and Personal Jurisdiction

##### 1.  Subject Matter Jurisdiction

Federal courts have original jurisdiction of any civil action arising under an act of Congress relating to, *inter alia*, copyrights. 28 U.S.C. § 1338(a). Here, the action arises under the Copyright Act, 17 U.S.C. § 101 *et. al.* Compl. ¶ 1. Therefore, this court has subject matter jurisdiction over this case.

##### 2.  Personal Jurisdiction

A court may exercise personal jurisdiction over a defendant who (1) is served while physically present within the state, (2) is domiciled within the state (3) consents to the jurisdiction of the state, or (4) who has sufficient minimum contacts in the state. *Itel FL., Inc. v. Container Land Associates*, No. C-97-0418, 1997 WL 229951, at *2 (N.D. Cal. 1997). 1233 Polk Street is a limited liability company organized and existing under the laws of the State of California. Compl. ¶ 15. 1233 Polk Street operates, maintains, and controls Mayes Oyster House, located at 1233 Polk Street, San Francisco, an address within the Northern District of California. *Id.* Therefore, this court has personal jurisdiction over Defendant 1233 Polk Street.

Plaintiffs also claim this court has personal jurisdiction over Defendants Nugent and Foos. Pl.'s Supp. Br. at 3. "[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation that employs him." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984). Here, Plaintiffs do not allege that Nugent or Foos are domiciled within California, that they were physically present when served, or that they consented to California's

jurisdiction. Therefore, the court analyzes personal jurisdiction with respect to Nugent and Foos assuming that they are not residents of California.

Personal jurisdiction is proper if it is "consistent with [California's] long-arm statute and if it comports with due process of law." *Boschetto v. Hansing*, 539 F.3d 1011, 1020-21 (9th Cir. 2008). Under California's long-arm statute, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the Due Process Clause of the Constitution. Cal. Code Civ. Proc. § 410.10. Personal jurisdiction may be established by showing that the court has specific jurisdiction over the nonresident defendant. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). A court has specific jurisdiction over a nonresident defendant if he has sufficient contacts with the forum state in relation to the cause of action. *Id.* Courts apply a three-part test in determining whether specific jurisdiction exists:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and quotation marks omitted).

A plaintiff bears the burden of establishing that the court has personal jurisdiction over a defendant. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted). "[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (internal quotation marks ommitted).

### i)  **Purposeful Direction**

In order to establish the first prong of the specific jurisdiction test, Plaintiffs must show that Nugent and Foos purposefully directed their activities toward California. *Schwarzenegger*, 374 F.3d at 802. To satisfy purposeful direction, the Ninth Circuit has adopted the *Calder* effects test.

*Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d, 953, 958 (N.D. Cal. 2012).  The effects test requires that the nonresident defendant: (1) commit an intentional act; (2) that is expressly aimed at the forum state; and (3) that caused harm that the nonresident defendant knew would likely be suffered in the forum state.  *Id*.  All three prongs must be met.  *Id*. (citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)).

Here, Nugent and Foos have committed an intentional act by operating and managing a limited liability company that exists under California law, which in turn, does business as, and operates, maintains, and controls Mayes Oyster House, a restaurant located within the forum state.  Compl. ¶¶ 15, 18-21.  All the public performances at issue took place at Mayes Oyster House, a California restaurant, owned and operated by a limited liability company existing under California law.  Stevens Decl. ¶¶ 11-12.  These facts are sufficient to show that Defendants have purposefully directed their activities at California.

### ii)     Claim Arises Out of Forum-Related Activities

The second prong of the specific jurisdiction test requires that the claim be one which arises out of or results from the defendant's forum-related activities.  *Schwarzenegger*, 374 F.3d at 802.  As stated above, all of the alleged infringing conduct occurred at Mayes Oyster House in San Francisco, California.  Stevens Decl. ¶¶ 11-12.  Therefore, the second prong of the specific jurisdiction test is satisfied.

### iii)     Reasonableness of Exercise of Jurisdiction

The third prong of the specific jurisdiction test requires that the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.  *Schwarzenegger*, 374 F.3d at 802.  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).  Here, Defendants have failed to participate in this litigation, and therefore have failed to meet their burden of showing that the exercise of jurisdiction would not be reasonable.  In any event, the factors a court generally considers in determining whether the exercise of jurisdiction over a non-resident defendant is reasonable weigh in favor of finding personal jurisdiction here.  *See Core-Vent Corp. v.*

*Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993) (factors include (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum).

The court therefore concludes that the exercise of personal jurisdiction over Defendants is reasonable.

### B. Service of Process

This court does not have jurisdiction over Defendants unless they have been served properly under Federal Rule of Civil Procedure 4. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Plaintiffs claim Defendants were properly served by substitute service pursuant to Federal Rules of Civil Procedure 4(c), 4(e), and California Code of Civil Procedure section 415.20(a). Pl.'s Supp. Br. at 4. Federal Rule of Civil Procedure 4(e) states that an individual "may be served in a judicial district of the United States by following state law for serving a summons . . . " Fed. R. Civ. P. 4(e)(1). California Code of Civil Procedure section 415.20(a) states that,

> "[i]n lieu of personal delivery of a copy of the summons and complaint to the person to be served . . . a summons [and complaint] may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where the copy of the summons and complaint were left . . . [The summons and complaint] shall be left with a person at least 18 years of age, who shall be informed of the contents thereof."

Cal. Code Civ. Proc. § 415.20(a). Here, Plaintiffs effected substitute service on Defendants on March 29, 2013. [Docket No. 9.] The court has examined Plaintiffs' proof of service dated May 22, 2013, serving each Defendant with the summons, Complaint, and other related documents. [Docket No. 9.] The court finds that service of the summons and Complaint on Defendants was adequately effected by substitute service and certified mail pursuant to California Code of Civil Procedure section 415.20(a).

8

### C.     The *Eitel* Factors

In order to determine whether default judgment should be entered against Defendants, the court must consider the factors set forth in *Eitel,* 782 F.2d at 1471-72.  Here, the first *Eitel* factor is met because Defendants have refused to take part in this litigation.  *Broadcast Music, Inc. v. Kiflit*, No. 12-CV-00856-LHK, 2012 WL 4717852, at *3 (N.D. Cal. 2012).  Plaintiffs will be prejudiced if default judgment is not entered because they will be denied the right to adjudicate their claims and obtain relief.  *Id.*

The second and third *Eitel* factors essentially require Plaintiffs to state a claim on which they may recover.  *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  To establish a claim of copyright infringement Plaintiffs must: (1) show ownership of the allegedly infringed material and (2) demonstrate that the alleged infringer violated at least one exclusive right granted to copyright holders.  *Kiflit*, 2012 WL 417852, at *2.  Furthermore, copyright infringement is willful if the defendants knew they were infringing on a copyright or acted with reckless disregard as to whether they were doing so.  *In re Barboza*, 545 F.3d 702, 708 (9th Cir. 2008).  Here, Plaintiffs allege four claims of willful copyright infringement and incorporate a schedule identifying the four claims in further detail.   Compl. ¶¶ 23-24; *see also* Compl. at 7-8 (Schedule).  In the schedule, each of Plaintiffs' four claims of copyright infringement are identified along with the names of the creators and publishers, dates of copyright registration, copyright registration numbers, as well as dates and location of the alleged infringement.  Compl. at 7-8 (Schedule).  First, Plaintiffs have sufficiently alleged ownership of the allegedly infringed material.  *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488-89 (9th Cir. 2001) ("Registration is prima facie evidence of the validity of the copyright").  Moreover, Plaintiffs have alleged that Defendants publicly performed each work without license or permission, and provide the date and place of infringement in the schedule.  Compl. ¶ 28; *see also* Compl. at 7-8 (Schedule).   For these reasons, the second and third *Eitel* factors weigh in favor of granting default judgment.

The fourth *Eitel* factor, the sum of money at stake in the action, also weighs in favor of Plaintiffs.  "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged."  *Core Concrete Const., Inc.*, 2012 WL 380304, at *4 (citing *Eitel*, 782

9

F.2d at 1472). However, "when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id*. Here, the amount of money at stake is reasonable as discussed further below. Therefore, the fourth *Eitel* factor weighs in favor of granting default judgment.

The fifth *Eitel* factor weighs in favor of granting default judgment because Defendants have not appeared in this action, let alone contested any of Plaintiffs' material facts. Finally, nothing in the record suggests that Defendants have defaulted due to excusable neglect. Plaintiffs have properly served Defendants, but Defendants have not submitted any response and have failed to participate in the matter. Examining these factors in the aggregate, the court finds that the first six *Eitel* factors outweigh the Federal Rules of Civil Procedure's strong preference for a decision on the merits.

## IV.  Damages

Plaintiffs ask the court for an award of statutory damages in the amount of $16,000 and attorneys' fees and costs totaling $6,645, plus interest. Frank Am. Supp. Decl. [Docket No. 29] ¶ 10. Plaintiffs also ask the court for injunctive relief.

### A.     Statutory Damages

The court may award statutory damages per infringement in a sum not less than $750 or more than $30,000. 17 U.S.C. § 504(c)(1). The court may increase this statutory award to a sum not more than $150,000 if the plaintiff proves, and the court finds that the infringement was committed wilfully. 17 U.S.C. § 504(c)(2). Trial courts have broad discretion in determining a just statutory damages award. *Kiflit*, 2012 WL 417852, at *4.

Plaintiffs claim that, had Defendants entered into an agreement at the time BMI first contacted them in July 2011, the license fees between July 1, 2011 and June 30, 2013 would have been approximately $3,494.40. Stevens Decl. ¶ 15. Plaintiffs also claim that the current annual license fee, through July 2014, is approximately $1,814.40. Stevens Decl. ¶ 15. Plaintiffs ask the court to award statutory damages in the amount of $16,000 or $4,000 per infringement. The court

notes that the lost license fees from July 1, 2011 through the current month would be approximately $4,250.00.[3]

The court therefore recommends that BMI be awarded statutory damages in the amount of $12,750, which is three times the value of the lost license fees. *See Kiflit*, 2012 WL 417852, at *4 (awarding BMI statutory damages in an amount slightly more three times the cost of the estimated license fees); *Broadcast Music, Inc. v. Paden*, No. 5:11-02199-EJD, 2011 WL 6217414, at *6 (N.D. Cal. 2011) (awarding BMI statutory damages of $7,000 per infringement); *Broadcast Music, Inc. v. Colonial Foods, Inc.*, No. C-92-4253-DLJ, 1993 WL 87808, at *3 (N.D. Cal. 1993) (awarding BMI statutory award of $2,000 per infringement).

### B.     Attorneys' Fees & Costs

Plaintiffs next ask the court to grant an award of attorneys' fees and costs in the amount of $6,645.[4] Frank Am. Supp. Decl. ¶ 10. Specifically, Plaintiffs ask for fees in the amount of $5,915 and costs in the amount of $730. Frank Am. Supp. Decl. ¶¶ 5, 7, 10. The court may use its discretion to award the prevailing party full recovery of costs and attorneys' fees, as part of costs. 17 U.S.C. § 505. In calculating reasonable attorneys' fees the Ninth Circuit applies the lodestar method. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1065 (N.D. Cal. 2010). Under the lodestar method, the court multiplies a reasonable hourly rate by the reasonable number of hours worked. *Id.* Therefore, the court must analyze the reasonableness of an attorneys' fees award by looking at (1) the reasonableness of the attorneys' hourly rates and (2) the reasonableness of the hours worked. *See Craigslist*, 694 F. Supp. 2d at 1066.

Plaintiffs' counsel states that her hourly rate is $575 per hour. Frank Am. Supp. Decl. ¶ 5. Counsel states that this rate is reasonable in light of Frank's special expertise and experience as a

---

[3] The court derived this figure by prorating the current year's license fee to cover the period July 1, 2013 through November 30, 2013 ($151.00/month x 5 months = $756.00), and adding it to the $3,494.40 in lost license fees for the period July 1, 2011 through June 30, 2013.

[4] Plaintiffs initially requested an award of $8,206 in attorneys' fees and costs, which included attorneys' fees incurred in compliance with this court's order for supplemental briefing. Frank Supp. Decl. ¶ 4. However, Frank's amended supplemental declaration requests $6,645 in order to reflect, *inter alia*, the court's order that no attorneys' fees will be awarded for time spent on supplemental briefing on matters that should be been addressed in the original brief. *See* Frank Am. Supp. Decl. ¶¶ 9-10.

practicing intellectual property lawyer practicing in the San Francisco Bay Area for over twenty years. Frank Supp. Decl. ¶ 5. Furthermore, counsel states that Jeremiah Burke's rate of $320 per hour is reasonable because it reflects his work as an associate in the region with five years of experience. Frank Supp. Decl. ¶ 6; Frank Am. Supp. Decl. ¶ 5. These rates are generally consistent with rates for comparable attorneys doing similar work in the area. *See Craigslist, Inc.*, 694 F. Supp. 2d at 1067 (applying an adjusted 2008-2009 *Laffey* matrix for reasonable attorney rates to reflect San Francisco regional factors, the court concluded that a reasonable hourly rate for an attorney with 20 or more years of experience is $516 per hour, and for an associate with 4-7 years of experience is $300 per hour). Accordingly, the court finds that the hourly rates charged for both Frank and Burke are reasonable.

Next, this court must determine whether the amount of hours worked is reasonable. Frank states that she worked a total of 3 hours and that Burke worked a total of 8 hours between approximately March 19, 2013, the date the complaint was filed, and July 23, 2013, the date this motion was filed. Frank Am. Supp. Decl. ¶ 5. Frank also states that her firm incurred additional attorneys' fees after the time this motion was filed. Frank Am. Supp. Decl. ¶ 8. Frank states that she worked an additional 2 hours and that Burke worked an additional 1.5 hours. Frank Am. Supp. Decl. ¶¶ 5, 7. In total, Frank and Burke have worked 14.5 hours on this case. These hours are reasonable. *See Controversy Music v. Shiferaw*, No. C03-5254 MJJ, 2003 WL 22048519, at *3 (N.D. Cal. 2003) (holding 25 hours worked by attorneys is reasonable in copyright infringement case in San Francisco dealing with infringement of four musical compositions).

Finally, Plaintiffs also ask the court to award costs. Plaintiffs aver that the total amount of costs incurred is $730 ($240 for process service fees plus $490 for filing fees). Frank Am. Supplemental Decl. ¶ 5. These costs are also reasonable. *See Craigslist*, 694 F. Supp. 2d at 1069 (granting an award of costs that included $1,152.07 for messenger and service costs and $350 for filing fees).

For the foregoing reasons, this court recommends that Plaintiffs request for $6,645 in attorneys' fees and costs be granted.

**C.**   **Interest**

Plaintiffs also requests that the court order Defendants to pay interest upon this judgment pursuant to 28 U.S.C. § 1961. Pl.'s Supp. Br. at 9. Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Therefore, the court recommends that Plaintiffs' request for post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a). *See Kiflit*, 2012 WL 4717852, at \*3 (granting plaintiff's request that defendant pay interest pursuant to 28 U.S.C. § 1961).

### D.     Injunctive Relief

Finally, Plaintiffs seek to enjoin Defendants and all persons acting under their permission or authority from infringing, in any manner, the copyrighted musical compositions licensed by BMI. Compl. at 5. The court has the power to grant final injunctions "to prevent and restrain infringement of a copyright." 17 U.S.C. § 502. "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *Kiflit*, 2012 WL 4717852, at \*3 (quoting *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993)). Here, Plaintiffs allege that Defendants are not only liable for copyright infringement, but that they continue to infringe Plaintiffs' copyrighted compositions. Compl. ¶ 29; Stevens Decl. ¶ 15. Moreover, the act of providing public performances of Plaintiffs' licensed compositions is easy to repeat and therefore the risk of future infringement is tangible. *See Kiflit*, 2012 WL 4717852, at \*3. Finally, an injunction will not impose a great hardship on Defendants as it is narrowly tailored to prevent future infringement by Defendants and those acting under their authority. *See id*. Accordingly, this court recommends that Plaintiffs' request for injunctive relief be granted.

### V.     Conclusion

For the foregoing reasons, the court recommends that Plaintiffs' motion for default judgment be granted. The court further recommends that Plaintiffs be awarded $12,750 in statutory damages, $5,915 in attorneys' fees, and $730 in costs, plus interest. Finally, the court recommends that Plaintiffs' request for injunctive relief be granted as well.

Immediately upon receipt of this order, Plaintiffs shall serve a copy of this order on Defendants and file proof of service with the court.  Any party may file objections to this report and

recommendation with the District Judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Cal. Civ. L.R. 72-2.

IT IS SO ORDERED.

Dated: November 21, 2013

DONNA M. RYU
United States Magistrate Judge